UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANIEL R.,

                Plaintiff,

    -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

20-CV-00589-MJR

DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 15)

Plaintiff Daniel R.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 13) is denied, defendant's motion (Dkt. No. 14) is granted, and the case is dismissed.

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

## BACKGROUND[2]

Plaintiff filed protectively for DIB and SSI on January 18, 2017, alleging a disability onset date of September 30, 2016.  (Administrative Transcript ["Tr."] 173-79, 180-85). The application was initially denied on May 8, 2017.  (Tr. 97-102).  Plaintiff timely filed a request for an administrative hearing.  (Tr. 105-23).  A video hearing was held before Administrative Law Judge ("ALJ") John R. Allen, on January 24, 2019.  (Tr. 34-66).  The ALJ presided from Toledo, Ohio, while Plaintiff and his counsel appeared in Buffalo, New York.  A vocational expert also appeared by telephone.  On February 26, 2019, the ALJ issued a decision finding Plaintiff not disabled through the date of the decision.  (Tr. 12-33).  On March 17, 2020, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final.  (Tr. 1-6).  This action followed.

## DISCUSSION

I.    *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  *Smith v.*

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.      *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.  Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.  At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since September 30, 2016, the alleged onset date.  (Tr. 17).  At step two, the ALJ found that Plaintiff had the following severe impairments: depressive disorder; unspecified psychotic disorder; and polysubstance abuse, in reported early remission.  (Tr. 18).  At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Tr. 18-20).  Prior to proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform work at all exertional levels, but with the following non-exertional limitations: Plaintiff would be limited to unskilled work involving up to three- or four-step tasks; could interact with coworkers on tasks, but was limited to superficial interaction with members of the general public; and should work in a relatively static environment, but could tolerate occasional changes in work setting or assignment.  (Tr. 20-26).

At step four of the sequential evaluation, the ALJ concluded that Plaintiff is unable to perform any past relevant work.  (Tr. 26).  At step five, the ALJ found that Plaintiff is capable of performing jobs that exist in significant numbers in the national economy.  (Tr. 26-27).  Accordingly, the ALJ determined that Plaintiff has not been under a disability from September 30, 2016, through the date of the decision.  (Tr. 27).

IV.    *Plaintiff's Challenge*

Plaintiff's treating nurse practitioner (NP) from Horizon, Chelsea Kendra, and social worker, Michelle Roberts, submitted an opinion identifying serious limitations in several areas of mental functioning and concluding that Plaintiff would likely struggle with full-time, competitive employment.    (Tr. 996-1000).    Specifically, NP Kendra and Counselor Roberts found that Plaintiff would be "seriously limited" in maintaining attention for two-hour segments, maintaining regular attendance and being punctual, working in coordination with others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically-based symptoms, accepting instructions appropriately, getting along with others, responding appropriately to changes in the work setting, and dealing with normal work stress, among other findings.  (Tr. 998). Plaintiff argues that the ALJ erred by not giving this opinion greater weight, based upon Plaintiff's treating relationship with NP Kendra and Counselor Roberts. The Court disagrees.

Plaintiff first argues that the ALJ improperly discounted NP Kendra's and Counselor Robert's opinion because neither provider was an "acceptable medical source"

under the applicable regulations.[3]  However, contrary to Plaintiff's claims, the ALJ did not

dismiss the opinion solely on this basis.  (Tr. 25-26).  Rather, he first pointed out that NP

Kendra was not an "acceptable medical source," but then went on to discuss the findings

included in the opinion.  (Tr. 25).  Moreover, the ALJ also noted the treating relationship,

and acknowledged that NP Kendra and counselor Roberts would therefore have "good

familiarity with the claimant's psychological condition."  *Id.*; *see also* 20 C.F.R. §§

404.1527(c)(2)(i)-(ii), 416.927(c)(2)(i)-(ii) (The ALJ may consider the "frequency of

examination" and "nature and extent of the treatment relationship" in weighing opinion

evidence).  However, the ALJ also found that while NP Kendra and Counselor Roberts

identified serious limitations and concluded that Plaintiff "would likely struggle with full-

time, competitive employment," they did not find him unable to meet competitive

standards in any category of mental work activity.  (Tr. 25-26, 998, 1001).  In fact, as the

ALJ noted, NP Kendra and Counselor Roberts also opined that Plaintiff had a satisfactory

or even good ability to function in several areas of mental functioning.  (Tr. 26, 998).  Thus,

the ALJ's decision shows that he considered this opinion, and did not discount it simply

because it did not come from an "acceptable medical source" according to the regulations.

(Tr. 25); 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

    Moreover, contrary to Plaintiff's claims, no medical opinion is "entitled" to any

amount of weight simply by virtue of the source's treating relationship with the claimant.

---

[3] On January 18, 2017, the agency published final rules titled "Revisions to Rules Regarding the Evaluation of Medical Evidence." 82 Fed. Reg. 5844. These final rules were effective as of March 27, 2017, and change some aspects of how adjudicators evaluate medical opinion evidence. Pertinent here, the new rules include licensed advanced practice registered nurses as "acceptable medical source[s]" for claims filed on or after March 27, 2017. 20 C.F.R. §§ 404.1502(a)(7), 416.902(a)(7). Here, Plaintiff filed his DIB and SSI claims before March 27, 2017. Thus, the new rules do not apply to this case, and NP Kendra does not qualify as an "acceptable medical source" for purposes of this claim.

To the contrary, the regulations provide that the ALJ must decide how much weight to give each opinion, considering how well-supported and consistent it is with the record as a whole.  20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2); *see also Rosier v. Colvin*, 586 F. App'x 756, 758 (2d Cir. 2014) (ALJ properly discounted treating source opinion that was inconsistent with other substantial evidence of record); *Cohen v. Comm'r of Soc. Sec.*, 643 F. App'x 51, 53 (2d Cir. 2016) (same).  With regard to medical opinions from non-acceptable medical sources, the regulations provide that the ALJ should consider the same factors applied to opinions from acceptable medical sources, but as with all opinions, the amount of weight given "depends on the particular facts in each case."  *See* 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1); *see also Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) ("[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician.").

The totality of the evidence in the record—including the mental status findings, evidence of improvement with treatment, daily activities, and the opinions of consultative examiners Drs. Janine Ippolito, Psy.D., and S. Hennessey, Ph.D.—provides substantial evidence that Plaintiff could perform unskilled, low-contact work with only occasional changes in work setting or assignment, as found by the ALJ.  (Tr. 21-23, 49, 51-52, 53 (testimony of improvement); 555 (treatment notes documenting reports of improvement); 303-304, 308-309, 376-77 (mental status findings); 210-221 (daily activities); 75-78, 89-92, 374-78 (Ippolito and Hennessey opinions).

Plaintiff next argues that because the ALJ discounted NP Kendra's and Counselor Roberts' opinion, and assigned only partial weight to both Dr. Ippolito's and Dr. Hennessey's opinions, he therefore substituted his own "lay opinion" in formulating RFC. However, this argument fails, because it is ultimately the ALJ and not a medical expert who is responsible for assessing a claimant's RFC, and there is no requirement that the ALJ's RFC finding mirror a medical opinion. *See* 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) ("Although we consider opinions from medical sources on issues such as . . . your residual functional capacity . . . the final responsibility for deciding these issues is reserved to the Commissioner."); *see also, Matta v. Astrue*, 508 Fed App'x 53 (2d Cir. 2013) (summary order) ("Although the ALJ's conclusions may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."). Nevertheless, in this case the ALJ's decision shows that he drew from aspects of the available medical opinions in formulating the RFC. Thus, he did not improperly substitute his own "lay" opinion for that of a medical source.

In fact, the ALJ's RFC assessment closely tracks Dr. Hennessey's opinion. (Tr. 20, 75-78, 89-92). Dr. Hennessey found that Plaintiff would be able to understand and remember simple instructions, respond appropriately to coworkers and supervisors, and deal with minor changes in the work setting. (Tr. 76-78). He further found Plaintiff would have moderate limitations completing a workday and work week without interruptions from psychologically-based symptoms, interacting appropriately with the general public, and responding appropriately to changes in the work setting. *Id.* These assessed limitations track closely with the RFC assessment for unskilled work, involving only

superficial interaction with the general public, and only occasional changes in work setting or assignment.  (Tr. 20).  Moreover, the RFC is consistent with Dr. Ippolito's assessment that Plaintiff would be able to understand, remember and apply simple directions and instructions, sustain concentration and work at a consistent pace, and sustain a routine without any limitations, and would have only moderate limitations in using reason and judgment to make work-related decisions, interacting adequately with others, regulating emotions, controlling behavior, and maintaining well-being.  (Tr. 20, 377).  Thus, Plaintiff's contention that the ALJ assessed the RFC without reliance on any medical opinions is without merit.

Additionally, there is other substantial evidence in the record supporting the RFC. The ALJ noted Plaintiff's reports of improvement in his symptoms with sustained sobriety and treatment, found both in his testimony and in treatment notes.  (Tr. 21, 23, 24, 49, 51-53, 555).  The ALJ specifically referenced Plaintiff's testimony that the medications were effective in suppressing hallucinations, reducing his feelings of anger, and controlling his mood.  (Tr. 24, 48-49).  Also, the ALJ relied upon the clinical findings found both in the treatment records and documented by Dr. Ippolito.  (Tr. 21-23, 271, 303-304, 308-309, 376-377).  The ALJ further relied upon Plaintiff's reported activities of daily living, noting that he was able to follow instructions, finish the activities he started, go out daily, drive, shop, hang out with his girlfriend, and do household chores.  (Tr. 19, 21, 210-221).

Plaintiff also argues that the ALJ erred by not referencing certain pages of clinical evidence within the record.  However, the ALJ thoroughly discussed the record as a whole, and there is no requirement that he reference every specific piece of evidence within a more than 700-page record.  *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58,

59 (2d Cir. 2013) ("Indeed, . . . '[a]n ALJ does not have to state on the record every reason justifying a decision,' nor is an ALJ 'required to discuss every piece of evidence submitted.'") (*citing Brault*, 683 F.3d at 448); *Mongeur*, 722 F.2d at 1040.  Here, a holistic review of the ALJ's decision shows substantial evidence in support of his decision, including the mental status findings, reports of improvement with medications and sobriety, and daily activities.

Plaintiff further argues that the RFC finding is not supported by substantial evidence, because the ALJ relied on evidence from periods during which Plaintiff was sober and adherent to treatment.  Plaintiff specifically cites to the ALJ's observation that Dr. Ippolito evaluated Plaintiff and rendered her opinion during a period of treatment compliance and sustained sobriety, and thus faults the ALJ for applying the opinion to the entire period at issue.  However, the record shows that Plaintiff was largely sober and compliant with treatment throughout the relevant period, and his brief relapses were outliers in the record.  (Tr. 283-373, 533, 551, 725, 729, 740).  Accordingly, the ALJ did not err by relying on evidence from periods of sustained sobriety and treatment compliance, or by applying Dr. Ippolito's opinion to the entire period at issue.  Moreover, the ALJ's RFC finding is in some ways more restrictive than Dr. Ippolito's opinion. (*Compare* Tr. 377 *with* Tr. 20).  As such, the ALJ implicitly acknowledged that Plaintiff would sometimes exhibit more significant limitations than he demonstrated in the consultative examination.  To the extent that the ALJ found Dr. Ippolito's opinion was not representative of Plaintiff's functioning throughout the relevant period, the ALJ implicitly accounted for this by limiting Plaintiff to only unskilled work (while Dr. Ippolito had found that Plaintiff would be capable of both simple and complex tasks without any evidence of

limitations).  (Tr. 20, 377).  Moreover, the ALJ also found that Plaintiff's substance abuse was periodic, rather than chronic, therefore he did not err by applying Dr. Ippolito's opinion to the entire period at issue.  (Tr. 24).

Plaintiff also argues that the ALJ cast a negative inference upon Plaintiff for both his history of substance abuse and periods of noncompliance with treatment.  However, it was not inappropriate for the ALJ to note the numerous references in the record to Plaintiff's improvement with sustained sobriety and treatment.  (Tr. 21, 23-24, 49, 51-52, 53, 555).  The regulations provide that the ALJ should evaluate the consistency of a claimant's complaints with the entire record, and lists frequency of treatment, effectiveness of medications, and precipitating and aggravating factors (such as substance abuse) as some of the many factors that an ALJ can consider.  *See* 20 CFR §§ 404.1529(c)(3)-(4), 416.929(c)(3)-(4); SSR 16-3p.  Here, the ALJ noted that Plaintiff's symptoms improve with sustained sobriety and medication compliance—as Plaintiff himself testified—while also acknowledging Plaintiff's complaints of some ongoing symptoms even during periods of sobriety and treatment.  (Tr. 22-24, 308-09, 370, 373).  The ALJ also considered Plaintiff's reasons for not wanting to take his medications. (Tr. 24, 726).  Moreover, the ALJ was clear to note that Plaintiff has documented mental illness even in the absence of substance abuse; thus, the ALJ did not imply that Plaintiff's impairments would be non-existent or non-severe in the absence of substance abuse. (Tr. 24).  Accordingly, the ALJ's observations that Plaintiff improved with sobriety and treatment do not amount to a negative inference against Plaintiff, but rather constitute a reasonable reading of the evidence in the record.

Plaintiff next argues that the case was not fully developed, because some of the treatment notes from Counselor Roberts are brief "assessments of progress" that do not document any mental status findings or observations.   Plaintiff argues that these assessments are insufficient, and that the lack of detail in Counselor Roberts' notes constitutes "a gap in the treatment record."  He therefore asserts that the ALJ should have recontacted Counselor Roberts to obtain more detailed treatment notes.  The Court finds this argument without merit.

While Plaintiff may disapprove of his therapist's notetaking style, the abbreviated treatment notes do not establish a gap in the record or impose an obligation on the ALJ to recontact Counselor Roberts.   Moreover, contrary to Plaintiff's claims, Counselor Roberts' notes do contain some mental status observations and other useful information. (Tr. 763, 767, 776).  Finally, and most significantly, the record as a whole was more than adequately developed, with more than two dozen mental status evaluations from several different providers, with no obvious gap in the record.  *See Rosa v. Callahan*, 168 F.3d 72, 79 n. 5 (2d Cir. 1999) ("[W]here there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim.").  As such, the ALJ had no obligation to seek any additional evidence.

Plaintiff has failed to show that the ALJ had any obligation to further develop the record or recontact Counselor Roberts. While an ALJ does have an affirmative duty to develop the record, even if a Plaintiff is represented by counsel, the primary duty rests with Plaintiff to present evidence that he has functional limitations rendering him incapable of performing substantial gainful activity.   42 U.S.C. § 423(d)(5)(A), applicable to SSI

through 42 U.S.C. § 1382c(a)(3)(H)(i); 20 C.F.R. §§ 404.1512(c), 404.1545, 416.912(c), 416.945(a)(3); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about his medical condition, to do so."); SSR 17-4p, 2017 WL 4736894 *1 ("Although we take a role in developing the evidentiary record in disability claims, claimants and their appointed representatives have the primary responsibility under the Act to provide evidence in support of their disability or blindness claims.").

Moreover, an ALJ has no obligation to obtain additional evidence when the record is already sufficiently developed to allow for a determination as to disability. *See* 20 C.F.R. §§ 404.1520b(b)(1)-(2), 416.920b(b)(1)-(2) (If the evidence is incomplete or inconsistent but sufficient for the ALJ to make a decision, he will make a decision based on the existing evidence); *see also Perez*, 77 F.3d at 48 (the ALJ is not required to obtain additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability."). If the evidence is incomplete or inconsistent, the ALJ "may" recontact a medical source, but is not compelled to do so if he finds the evidence is already sufficient to make a decision. *Id.* at §§ 404.1520b(b)(2)(i); 416.920b(b)(2)(i); *see also Micheli v. Astrue*, 501 F. App'x 26, 29-30 (2d Cir. 2012) ("The mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to recontact a treating physician.").

Here, the record was more than adequately developed as to Plaintiff's mental functioning throughout the relevant period, and Plaintiff has therefore not shown that further development was required. Indeed, the record reflects approximately 19 visits with either Counselor Roberts or Counselor Koksal, between February 2018 and August

2018, during which mental status findings and observations were recorded.  (Tr. 583, 586, 596, 598, 600, 608, 617, 627, 653, 666, 676, 685, 700, 726, 747, 756, 763, 767, 776).  In addition to these mini-mental status evaluations, the treatment records also show more in-depth mental status evaluations recorded in December 2017 and February 2018.  (Tr. 544-546, 577-578).  Records from Monsignor Carr Institute, where Plaintiff treated from approximately August 2016 through November 2017, also reflect numerous mental status evaluations.  (Tr. 303-304, 308-309, 368-369).  Additionally, the record contains the complete mental status examination of consultative examiner Dr. Ippolito, and mental status findings recorded in prison records from August 2016 and earlier.  (Tr. 374-378, 924, 967).  Thus, the record was sufficiently developed with more than two dozen evaluations of Plaintiff's mental status at different times throughout the period in question.  As such, the record does not show any obvious gaps that would require the ALJ to further develop the record or recontact Counselor Roberts for additional information. *Rosa*, 168 F.3d at 79 n. 5.

Finally, Plaintiff suggests that the ALJ has a duty to further develop the record because he did not ask at the hearing whether the record was complete.  However, contrary to Plaintiff's claims, the ALJ did inquire at the hearing whether the record was complete.  In fact, the record reflects that the ALJ went over the proposed exhibits in the record with Plaintiff's counsel, and then asked: "Everything else as far as you know is in?" (Tr. 37-38).  Plaintiff's counsel responded that he was waiting on one other record from a hospital in California, but that "[e]verything else is in though, Judge."  (Tr. 38).  The ALJ agreed to hold the record open for two weeks for the submission of this hospital record, which was submitted after the hearing.  (Tr. 1004-1014).  Thus, the ALJ asked Plaintiff's

counsel whether the record was complete, and agreed to hold the record open for the only outstanding evidence identified by Plaintiff's counsel.  Thus, Plaintiff's argument that the ALJ failed to develop the record is without merit.  *See Gonzalez v.Colvin*, 1:15-cv-00767-MAT, 2018 WL 1040250, at *3 (W.D.N.Y. Feb. 24, 2018) ("Although an ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation.") (*citing Maes v.Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008)).

## CONCLUSION

. For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is denied, defendant's motion for judgment on the pleadings (Dkt. No. 14) is granted, and the case is dismissed.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      May 3, 2021
            Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge